UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROBIN Z. CROUDUP,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | No. CV 05-221-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 10, 2005, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on April 20, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 21, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on August 27, 1959. [See Administrative Record ("AR") at 58.] She is a high school graduate, has attended four years of college and has earned an AA degree. [AR at 28, 76.] Plaintiff last worked full-time in 1987 as a group supervisor for a county children's center, where she assisted in the care of children ranging in age from newborn to 18 years old. [AR at 28-29, 71, 81.]

On January 21, 2000, plaintiff protectively filed an application for Supplemental Security Income payments, alleging disability due to uncontrollable blood pressure and bronchial asthma. [AR at 58-61, 70, 89.] She claimed she last worked, on a temporary basis, in December, 1998. [AR at 81.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on September 18, 2001, at which time plaintiff appeared without counsel and testified on her own behalf. [AR at 24-39.]

After the hearing and a review of the record, the ALJ found that plaintiff had the impairments of status post dislocated left patella, hypertension, cardiomegaly and asthma, but that she did not have an impairment or combination of impairments listed in or equal to any of the Listings. The ALJ concluded that plaintiff was not under a disability. [AR at 13-14.] Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. On February 15, 2002, the Appeals Council advised that the ALJ's decision would stand as the final decision of the Commissioner. [AR at 3-4.] Plaintiff subsequently filed suit in federal court. On January 27, 2003, this Court reversed the ALJ's decision on the basis that the record had not been fully developed, and remanded for further proceedings. [AR at 258-68.]

A second hearing was held on December 8, 2003, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 351-73.] On April 20, 2004, the ALJ determined that plaintiff

was not disabled because she can perform the equivalent of light work with certain restrictions.[1] [AR at 229-35.] When the Appeals Council denied review on November 17, 2004, the ALJ's decision became the final decision of the Commissioner. [AR at 220-22.]

### III.
### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term substantial evidence means more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion. Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

### IV.
### THE EVALUATION OF DISABILITY

Persons are disabled for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is

---

[1] Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ also found that plaintiff is precluded from working in hazardous settings, such as at unprotected heights or near dangerous machinery, and from working in environments with significant respiratory irritants, such as fumes, dusts, and gases. [AR at 232, 234.]

expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a severe impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a severe impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments (Listing) set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the protective filing date of the instant application. [AR at 230, 233.] At step two, the ALJ

concluded that plaintiff's impairments -- status post left patella dislocation, hypertension, cardiomegaly, and asthma -- are severe. [AR at 231, 234.] At step three, the ALJ found that the impairments do not meet or equal any impairments in the Listings. [Id.] The ALJ further determined that plaintiff retains the residual functional capacity[2] to perform light work with certain restrictions. [AR at 232-34.] At step four, the ALJ concluded that plaintiff is unable to perform her past relevant work. [AR at 232, 234.] At step five, the ALJ concluded that there are a significant number of jobs in the national economy that she can perform. [AR at 233-34.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to (1) properly evaluate the opinion of the treating physician, and (2) properly consider her testimony. Joint Stipulation ("Joint Stip.") at 3. The Court agrees that the ALJ erred in assessing plaintiff's credibility, and remands the matter for further proceedings.

**REJECTION OF PLAINTIFF'S TESTIMONY**

Plaintiff asserts that reversal is warranted because the ALJ's reason for rejecting her testimony is not "clear and convincing." Joint Stip. at 12. In particular, plaintiff contends that the ALJ premised the credibility rejection solely on plaintiff's failure to comply with medication, and did not discuss any other relevant factors. See id.

The medical records show that plaintiff has a history of severe hypertension. Plaintiff testified at the September 18, 2001, hearing that her high blood pressure makes her tired, dizzy, hampers her eyesight, and makes her feel like she is going to pass out. [AR at 35-36.] Plaintiff also has asthma and knee problems, and experiences numerous aches and pains throughout her body. [AR at 36-38.]

---

[2] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

According to plaintiff's testimony, the side effects from her medications have negatively impacted her eyesight. [AR at 33-34.] She can dress herself while lying down, but has to have help caring for her children. [AR at 32.] Her daughter helps her with the household chores, as plaintiff is too tired and out of breath to do them herself. Id.

At the December 8, 2003, hearing, plaintiff complained of persistent blurred vision, as well as urinary incontinence, severe headaches and eye pain. [AR at 355, 357-60.] She testified that because of negative side effects from certain medications, her doctors kept changing her prescriptions until they settled on "the patch and the pill." [AR at 365-66.] According to plaintiff, she is following her prescribed regimen to the extent she takes her medication each night. She said that she cannot take it in the morning because "it's too much" for her to tolerate. [AR at 366-67.]

Plaintiff produced medical evidence of underlying impairments that are reasonably likely to cause the alleged symptoms. Medical findings are therefore not required to support the alleged severity of pain or other symptoms. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3 (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms beside pain.").

Rather, the ALJ can reject plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient."

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041. If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Here, because there is no evidence of malingering, the ALJ's reason for rejecting plaintiff's credibility needed to be clear and convincing. Benton, 331 F.3d at 1040. The ALJ set forth one reason in support of his rejection of plaintiff's subjective complaints: poor compliance with her prescribed medication. As explained in more detail below, although noncompliance is documented in the record, this reason is not sufficiently clear and convincing to negate the entirety of plaintiff's subjective complaints.

In the decision, the ALJ determined that plaintiff's "poor compliance with her prescribed medication for hypertension ... [is] a circumstance critically adverse to her credibility." [AR at 231.] The ALJ specifically noted that, in a June 2002 internal medicine consultation report, plaintiff's physician made the following comments: "[T]he patient has a long history of medical non-compliance and multiple missed appointments. She was actually very difficult to get [ ]hold of and it took over a month to schedule an appointment 2 days ago, for which she did not show up. She showed up an hour late for today's appointment and originally refused to be seen later, but then showed up at the end of the clinic and requested to be seen. Patient actually has been released from Hypertension Clinic because of her non-compliance and missed visits, and she is no longer followed by Cardiology because of the same problems." [AR at 231, 298.] The ALJ additionally observed that treatment records from June 2002 indicated plaintiff had been unwilling to use her inhalers regularly and that, in general, the record reflects poor cooperation on her part. [AR at 231, 299.]

A review of the record supports the ALJ's determination that plaintiff's noncompliance with her hypertension medication was amply documented. [See, e.g., 121, 314, 322, 324, 336-38, 341.] Indeed, under the Regulations, failure to follow a prescribed course of treatment "without a good reason" will result in a determination of not disabled. See 20 C.F.R. § 416.930(b). Plaintiff, however, testified that past medications caused serious detrimental side effects, and that her

7

doctors experimented with changing her prescriptions until the right combination was found. [AR at 365-66.] Consistent with this assertion, a review of the record reveals that, at various points in plaintiff's treatment history, she complained of negative side effects from her medications, and that her prescribed medications to treat the hypertension changed on several different occasions.[3] [See AR at 305, 309, 346-47, 350.] The ALJ did not address whether or not this explanation was credible, and if so, whether it constitutes a "good reason" within the meaning of the Regulations to not comply with treatment. Plaintiff also testified that she is currently compliant with the prescribed treatment, but still experiences disabling symptoms. [AR at 366-67.] The ALJ, however, made no finding with respect to that particular testimony.

      Moreover, the ALJ failed to negate pertinent testimony which, if true, would likely hinder plaintiff's ability to perform in the workplace. For example, although plaintiff has consistently testified that she experiences blurred vision, the ALJ did not make any findings with respect to that specific complaint. It is not clear from the ALJ's decision if blurred vision is considered a symptom related to uncontrolled hypertension (which, if treated, may be alleviated), or if, as plaintiff asserts, it is a side effect from her medication. The same generally holds true for plaintiff's allegations regarding urinary incontinence, headaches, and eye pain. If the ALJ finds these particular complaints not credible, he must articulate that determination as well as identify the contradicting evidence. Benton, 331 F.3d at 1041. Again, it is not clear if the ALJ attributes these symptoms to the uncontrolled hypertension (meaning they would ultimately dissipate with improved compliance). The ALJ needs to make explicit findings with respect to these allegations.

      Thus, while the Court concludes that the record supports the ALJ's finding that plaintiff has not been compliant with her treatment, in light of her testimony as a whole, this reason alone is not sufficiently clear and convincing to affirm the decision. Upon remand, the ALJ is directed to

---

[3] For example, in April 2000, plaintiff was taking Verapamil and hydrochlorothiazide for her hypertension. [AR at 181.] In September 2001, she was prescribed Dyazide and Plendil. [AR at 337.] In June 2002, it was documented that she was using only a Catapres Patch to treat the condition. [AR at 298.] In October 2002, she was put on Prenivil, which was apparently discontinued a few months later due to side effects. [AR at 305, 309.] In February 2003, it was noted that plaintiff was using the patch as well as an unspecified "HTN pill." [AR at 290.]

1 address not only plaintiff's testimony that problems with side effects contributed to her failure to
2 comply with medication, but the other symptoms plaintiff alleges as well (i.e., blurred vision,
3 incontinence, and pain). Because these allegations, if accepted, could pose serious limitations
4 in the workplace, it was error for the ALJ to ignore them. See Morgan v. Comm'r of the Soc. Sec.
5 Admin., 169 F.3d 595, 599 (9th Cir.1999) ("The ALJ must specifically identify what testimony is
6 credible and what testimony undermines the claimant's complaints."). In the event the ALJ finds
7 plaintiff not credible, he must set forth clear and convincing reasons based on substantial evidence
8 for rejecting the complaints. Because the result of this determination may impact other parts of
9 the ALJ's analysis, such as the evaluation of the treating physician's opinion (which the ALJ
10 rejected, at least in part, based on the physician's "uncritical endorse[ment]" of plaintiff's subjective
11 complaints [AR at 232]), plaintiff's remaining claim will not be addressed at this time.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

/
/
/
/
/
/
/
/
/

In this case, remand is appropriate to further assess plaintiff's credibility.[4]  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: March 30, 2006

/s/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[4]  In light of the Court's remand order, the Court does not address plaintiff's remaining contention of error.